at all. Hank Sherrod is here for the appellate. Gregory Burgess is here for the appellees. And Mr. Sherrod, you're already at the podium. I see you're ready to go. You may begin.  Okay. Okay. This has two issues. The first is whether these officers had arguable, reasonable suspicion to demand that Mr. Edger provide a driver's license or ID card. And two, whether his refusal to provide an ID card violated Alabama law. I'd like to start with the second issue first. Alabama law fits in a scheme of laws that were passed decades ago throughout the country called Stop and Identify laws. These laws were discussed by the U.S. Supreme Court in Hybel v. 6 Judicial District. They made clear two things. One, the Fourth Amendment is a limit on governmental authority on what officers can do. And this court said they can ask people to identify themselves in the context of a Terry search. But they said state law establishes the citizen's obligations. Now in Nevada, that statute had been interpreted to only require a person to provide their name. Now here, this statute doesn't need any interpretation. Well, this is the Alabama obstruction statute that he was arrested for violating. Correct. And so I guess just the problem for you as I see it is that in your brief, you don't cite any materially similar cases to support the clearly established law prong of the qualified immunity analysis. That's the big problem that you have in this case. Well, Your Honor, I guess I would hope not, Your Honor, because the clearly established law here is that there is not an arguable basis factually. Where's the case? To my knowledge, there isn't a case, but the law is established by statute. So if the facts are, don't fit an Alabama criminal code, this court has not hesitated in multiple cases to find there's no arguable probable cause without a specific case where an officer was out of line in that particular factual scenario. Isn't this a reasonable mistake, though? Let's just say that on the part of the officer. Is it a reasonable mistake applying the law? The only issue that plaintiff believes there's any question about factually or really legally is this section 15530, which says what a citizen's obligations are under Alabama law. It says an officer, if he has reasonable suspicion, which we say he doesn't here, but if he did, it says may demand of him his name, address, and explanation of his actions. That's a correct statement of the law, but the question is was it reasonable for an officer in Officer McCabe's position to think that he was refusing to provide his name when he said he wasn't going to provide ID? So if this statute was ambiguous and says something like the citizen has to identify himself, then maybe an officer might think, oh, identify gives me the option of demanding a driver's license. But Alabama law says it in letter. May demand of his his name, his address, and explanation of his actions. The statute is not ambiguous. Lawyers can come up with some argument that, well, I'm really asking for your name. So you say you don't need a case. You're just relying on the statute itself. Correct. He couldn't ask for his driver's license. That's the clearly established law, period. The law is established. But Judge Covington says, well, an officer is entitled to make a mistake, right? And so there was a 9-11 call, and these gentlemen met the description of the people who were, quote, messing around with the car. So could a reasonable officer, even though the statute says you can't ask for the driver's license, even though the statute says what you says it says, would a reasonable officer think that he wasn't violating the law? How do you answer that question? Statutory law is crystal clear in terms of the obligation on the driver's license. Then officers don't get to make that kind of mistake on the law. Even if there was arguable probable cause for the stop and the arrest? Let's just put to the side that there was arguable reasonable suspicion to detain him. And in question, let's just, again, plaintiff has argued that, disagrees with that, but let's just accept that to be the case. What the officer can do in that situation under Hybel and crystal clear letter Alabama law is name, address, and an explanation of his actions. That is crystal clear. He has to violate something. It may sound reasonable if you don't know Alabama law, if you can't read the statute for an officer. It seems reasonable, and Hybel says they can ask. It's permissive. Let me ask you, how should this court determine whether a police officer's mistake of law is reasonable? What do you say? What is the letter of the law? What do the words say? Could a reasonable officer, reading the letter of the law, conclude that this law authorizes him to ask for ID cards? No officer, reading the law, would believe that it says, and may demand of him, his name, etc. Is the idea that the statute itself gives the officer notice of what's permitted, so that you don't need a prior case that's similar? By the way, this is throughout the whole country, except for maybe one statute in Hybel allowed officers to see if they had an ID, they could ask for it, but it didn't require them to have an ID. Throughout this country, we are not a carry ID country. Every state requires you to have a driver's license when you're driving a car, but we do not have to walk around carrying ID cards. Officers can ask for it, but Hybel specifically says... If he's a driver, the officer can ask for your driver's license. Driving. That's the specific language of the statute. Could a reasonable officer think that here, Mr. Edger was the driver of the vehicle? A reasonable officer could wonder if he had been a driver of a vehicle. Almost everybody walking around in this country had at one point... If you were driving. He was not driving. The wheel was off the car he was working on. The other car was shut down. He was a mechanic working on a car. Again, statutes that set forth citizens' obligations by the state legislatures, when they're clear, officers don't get to disregard what they say and say it was a mistake. This is simple. He was not driving. If there was reasonable suspicion, they could ask him his name. What if he's not driving, but he's reasonably able to drive? There could be scenarios, and there's lots of Alabama case law. I didn't brief it above, but it was briefed below. Talking about somebody that's effectively in control of a vehicle. You can't be at the wheel. People trying to get out of DUIs who are actually sitting there in their car with the keys in it. There are all kinds of scenarios where you get close to the line, but this is not close to any of the lines in the statute or in the law interpreting that statute. This is not almost driving or nearly driving. This is a guy who's working on a disabled car. The car's shut. The car's not on. Nobody is driving. The vehicles are parked. I guess he wouldn't have any reason, the officer wouldn't have any reason to know. Maybe the other person there was the driver. Correct. Future drivers, past drivers. They were not currently driving. No reasonable officer could believe they were driving or that Mr. Edger was required, if he had reasonable suspicion, to produce an ID card as a non-driving person. How does what? Let me just ask one more question. The trial court said that the police officer, one of them, had arguable probable cause to arrest Mr. Edger because a reasonable mistaken officer could have believed that Edger's failure to provide his driver's license violated Alabama code. And your argument is no because of the plain language of the statute. It's something that you don't have to be a lawyer or a judge to understand. A police officer should understand that. Have I, in essence, encapsulated what your argument is here to the court? Very well, Your Honor. Thank you, Mr. Sherrod. We'll hear from Mr. Burgess. May it please the court. Good morning. My name is Greg Burgess and I represent the city of Huntsville. Officer McCabe and Officer Perilat, there are two reasons why this court should affirm the district court's summary judgment. One, there was no constitutional violation. And by that I mean there was probable cause to effect Mr. Edger's arrest. But even if this court concludes there was not probable cause, summary judgment is still probable because there was, at a minimum, arguable probable cause. And because of the arguable probable cause, both qualified immunity and state agent immunity apply. Let me ask you a question that I think is unclear from our precedent. Does arguable probable cause go to the constitutional violation prong or the clearly established prong of the qualified immunity test? It's my understanding that it goes to the clearly established prong. We bear the burden. So if there's no arguable probable cause, then the violation is clearly established. Is that right? Regardless of whether there's a case directly on point. I would word it this way. My officer did not violate clearly established Fourth Amendment law if she had arguable probable cause. Thank you for that. So I would like to spend my time, unless the court tells me otherwise, focusing on the qualified immunity. Let me ask you something. Do you agree that the police officers were mistaken on the law here? I mean, it is clear. You read it. It is clear. I would respond to that question this way, Judge. This is not an obvious clarity case. This court has to determine whether the law is clear in light of existing precedent. There is no existing precedent defining the contours of 15-530. He says he doesn't need it because he's got a clear statute. The statute is clear. I completely disagree. You have to only use those magic words that Mr. Sherrod says. A police officer, a trained police officer for the city, you've got the city's obstruction statute. A reasonable officer ought to know that you can't stop somebody on the street and ask them for their driver's license. A reasonable officer, trained to be a police officer, ought to know that you can conduct a Terry stop and ask someone for their name and identifying information. But you can't stop somebody on the street and just ask them for their driver's license, unless it's for your safety because they've been driving a car. Right. I would respectfully disagree with the court, and I would answer the question this way. That question has to be answered in light of existing precedent, and I think we have to separate what 15-530 allows and what 32-69 allows. We say that the arrest can be premised upon either. If I'm focusing on 15-530, the statute that essentially codifies Terry, and it says that an officer may demand name, address, and explanation of actions, there's no case out there that I'm aware of, Alabama Supreme Court case or otherwise, that says thou shall only use those words and only those words. And to the extent you deviate from it, you have violated clearly established law. Well, let me just say this now, and we've looked, I think we've all looked at the video. Mr. Edger offers to give Officer McCabe his driver's license. He says, he offers several times emphatically and respectfully. He offers to say this is not my car. He even offers to give her his driver's license, and he gets arrested anyway. I believe that occurred after he was taken into custody. In the transcript, there are three specific requests for identification preceding him being placed under custodial arrest. Request number one was, do you all have driver's license or ID on you? In response to that, he said, quote, I ain't going to submit to no ID. That was his response to question number one. Question number two was, no, you do need to give me driver's license or ID. And in response to that, he says, quote, no, I don't. Listen, I don't want you to run me in for anything. But that's early now in the video, before they put him in the squad car. He says, this is a mistake here. And he offers to give Perlow his driver's license, and that's refused. I think Your Honor has to evaluate whether or not probable cause or arguable probable cause existed at the point of arrest. That probable cause did not evaporate later. He may have offered later. He apologized later. He tried to give his driver's license later. But the question is, did she have arguable probable cause or probable cause to effect the arrest at the moment it was effected? And I would suggest in response to your question, Judge Covington, that no matter how Mr. Covington is arguing his ID or his name. Well, let me go back to my question. Is this okay if a police officer makes a mistake of law? It's okay. I mean, we forgive the situation because of the circumstances. But my concern is, is it reasonable in light of what your colleague has said, and that is the plain language of the statute. This is not a complicated 30-page statute. It's pretty straightforward. And that to me is really at the heart of this. Was this a reasonable mistake of the law? How would you respond to his argument that just read the words, they're plain? Are you referring to when you asked me about the statute and the plain meaning, are you talking about 15-530? 15-530. I would say that an officer could reasonably conclude that by asking someone for driver's license or ID, that you could fall within the protection of 15-530. You don't have to utter the words name, address, and an explanation of actions. And I would also go back to say that reasonableness inquiry has to be analyzed in light of existing precedent. I'm not aware of any preexisting, controlling, factually particularized case law that says Officer McCain violated the law when she said driver's license or ID. Nor am I aware of any preexisting, controlling, or factually particularized case law that said when he refused that she could not arrest him. And I think that is the critical inquiry for the court. That's how I would answer the 15-530 question. I would also like to add, because I think Judge Wilson had some questions about 32-6-9, and that is another prong upon which we premise the legality of the arrest. As this court knows, 13A-10-2, the obstruction statute, speaks in terms of whether or not the arrest is premised upon an independently unlawful act. We've already talked about 15-530. That is one of the independently unlawful acts that we contend was violated. As for driver's license or ID, he refused. I think that that was violated. And there's no case law that I'm aware of saying otherwise. We also premise the arrest on the basis of 32-6-9. 32-6-9 is likewise not clear by its terms. And case law makes it even less clear. 32-6-9 is a statute that says it makes it a crime for a driver to provide a driver's license upon demand by a police officer. Under Alabama law, the term driver is not limited to one who is driving. It is also based upon someone who is in actual physical control of a vehicle. That is where the legal fuzziness comes in. Does the Fourth Amendment permit a pedestrian to refuse an officer's request to show their driver's license? Alabama law? I believe so. If I am forced to concede that he was a mere pedestrian and not someone who was in actual physical control of a vehicle... Well, Mr. Edgar wasn't the driver of the car. This wasn't his car. He wasn't the driver. He explained it to the officer. He explained that to the officer. So he's not the driver. Does the Fourth Amendment permit an officer to demand that he show his driver's license? I think an officer could reasonably conclude that you could. I think that could be a reasonable mistake. But I cannot point the court to any law that says you can or cannot. Again, I'm not arguing that he was a driver of the car that was on the jack. I'm arguing that he was in actual physical control of the vehicle that he arrived in. When Officer McCabe arrived, she said, whose car is that? And he admitted, that's mine. And it was just feet away. I would urge the court to take a look at how ambiguous the law is surrounding what is someone who is in actual physical control. It speaks in terms of the power and ability to operate, move, park, or direct whatever use or non-use is to be made of the motor vehicle. And that can be based upon the totality of the circumstances. And this court in Cantu also recognized that the officer doesn't have to see them driving. That black car was feet away from him. So it seems to me under your argument, a person could be crossing the street to go to his car. The officer says, do you have a car here? He says, that's my car. Okay, give me ID. You're a driver. I think an officer could certainly make that reasonable mistake. And I think that that's very close to the facts of Cantu. The officer did not see the person driving that I'm aware of. And I think that maybe he had been in the driver's seat at some point and was going towards his car. Mr. Sherrod's going to know that case better than me. I believe it was his. But that is a case that is very similar here. And this court concluded that there was a violation of 32-6-9. One, I think that a 32-6-9 violation occurred at a minimum, though. I think that a reasonable mistake could be made in that regard. And the mistake you're talking about is a mistake of law. Is that right? Yes, ma'am. A mistake of law, but a trained city of Hoover police officer ought to know, reasonably ought to know, that you can't stop someone on the street and ask them for their driver's license. You're saying that an officer can make that mistake. And a trained officer can reasonably think that he can stop anybody on the street and ask them for their driver's license. I think where I struggle with that question is someone on the street. Yeah. See, the critical word is reasonable, right? I would agree that it needs to be a reasonable mistake, yes, sir. But again, I think that the vast majority of officers out there conducting Terry stops are not going up there and saying, sir, may I have your name addressed and will you explain your actions? I think that they're going to say, can I see some identification? That is a reasonable request of a police officer. And the reason why people ask for ID, just like I had to provide ID when I came in, is to make sure I'm not giving a false name. You know, ID is broad enough to include one's name, or at least a reasonable police officer could think so. On the video, I believe the officer goes like this when she asks for ID. She makes kind of a square shape with her fingers. Am I right about the facts? Doesn't that suggest she's asking for a card? I think that is a reasonable conclusion, yes. But I also think that a reasonable officer could believe that when someone says, I ain't going to submit to no ID and I don't want you to run me in for something. No matter how she phrased that question, he wasn't going to give his name. And that's where the investigation ground to a halt. Mr. Edger has suggested that there were other ways to figure out what was going on other than asking him his name or his driver's license. But Mr. Edger doesn't get to make that choice. The probable cause analysis, and certainly the arguable probable cause, is supposed to be looked through the eyes of the officer. It's not supposed to be viewed through the eyes of the subject. Let me close by saying to your question, Judge Wilson, this is not an obvious clarity case. This is a case where Mr. Edger needs to point to a preexisting, factually particularized case in order to show that my officer violated either 15530, 3269, or 13A-10-2. That case law has not been cited. I will go one step further. United States v. Lanier. Even in the obvious clarity cases, it's supposed to be evaluated in light of existing precedent. The absence of existing precedent is where our argument is its strongest. Last point. To the extent that this court thinks that there is some ambiguity in the law, if this court believes that it's a close call, the benefit of the doubt is supposed to be given to the officer. If the contours of these statutes are not defined by existing law, and this court thinks that it's an uncertain question, then Officer McCabe is supposed to be given the benefit of the doubt. Thank you, Mr. Burgess. Mr. Sherrod, you reserve some time for rebuttal. I really only want to make a few points. One is, there is no issue with the officer asking for ID. That's not against the rules. Officers do ask for ID on the street of pedestrians all the time. The question is, does it violate Alabama law for the person not to provide it? The high court said they could ask for ID, they just couldn't arrest him under Nevada law merely for failing to provide the ID. Second, the can-do video, the guy was sitting in the driver's seat of the car when the officer came up to the window for their initial interaction. That case does not suggest anything is different in this case. And I think that the factual record is clear that he was asked to provide a card, as the court noted, and that's the way he understood it. And that is what the officer said numerous times. I don't have anything else. Thank you for your time.